UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA MICHELLE PLEITEZ TREJO, | Case No. 5:26-cv-03332-MAR |
| Petitioner, | |
| v. | ORDER ON PETITION FOR HABEAS CORPUS |
| MARKWAYNE MULLIN et al., | |
| Respondents. | |

## I.

## __INTRODUCTION__

On June 16 2026, Andrea Michelle Pleitez Trejo ("Petitioner"), by and through counsel, filed an Petition for Writ of Habeas Corpus ("Petition") by a Person in Federal Custody pursuant to 28 U.S.C. § 2241.  ECF Docket Nos. ("Dkt.") 1.  Petitioner argues her detention in Immigration and Customs Enforcement ("ICE") custody without notice or a pre-deprivation hearing violates her Fifth Amendment due process rights, the Fourth Amendment, the Immigration and Nationality Act (INA) and the Administrative Procedure Act.  Petitioner seeks release. Id. at 31.[1]  Respondents have filed an Answer.  Dkt. 7.  For the reasons set forth below, the Petition is **GRANTED**.

---

[1] All citations to electronically filed documents refer to the CM/ECF pagination.

## II.

## BACKGROUND[2]

Petitioner is a native and citizen of El Salvador who entered the United States in December 2024 to apply for asylum. Dkt. 1 ("Pet") at 3; see Ex. A. Petitioner was released from custody on January 16, 2025. Id. at 4. She was initially given an electronic bracelet, that was later changed to an ankle monitor. Dkt. 1-1 at 5 (Declaration of Carrie Leroy). On March 9, 2026, Petitioner appeared at an ICE office to have her ankle monitor tightened. Id. at 2. She was told it would likely be removed at her next visit. Id. On March 12, 2026, Petitioner voluntarily appeared at an ICE check-in. Pet. at 4–5. Petitioner was detained without notice or a pre-deprivation hearing. Id.

On June 16, 2026, Petitioner filed the instant Petition. Petitioner asks the Court to order her immediate release; permanently enjoin Respondents from re-arresting and re-detaining Petitioner in violation of her constitutional rights and the INA, 8 U.S.C. § 1225; and enjoin Respondents from placing any monitoring devices, such as an ankle monitor, on Petitioner's person in violation of her constitutional rights without an individualized notice of the basis for such device and a hearing before a neutral arbiter at which Respondents must prove that Petitioner's flight risk or danger requires such monitor. Pet. at 31.

Respondents filed an answer on June 23, 2026. Dkt. 7, Answer. Respondents affirmatively state that they are "not presenting an opposition argument" to the Petition. Id. Petitioner filed a reply. Dkt. 8, Reply. Thus, the matter stands submitted.

---

[2] The background provided herein arises from the allegations in the Petition and attached exhibits, which Respondents do not contest. The Court considers the facts alleged by Petitioner to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

The Court finds that Petitioner's detention—without any meaningful pre-deprivation notice or an opportunity to be heard—violates due process.  Accordingly, the Court orders that the Petition be granted and a writ of habeas corpus be issued requiring Petitioner's immediate release and preventing her re-detention absent pre-deprivation notice and a hearing.

### III.

### LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.' ").  In federal habeas proceedings, the petitioner bears the burden of proving her case by a preponderance of evidence.  Lambert v. Blodgett, 393 F.3d 943, 970 n.16 (9th Cir. 2004); Bellew v. Gunn, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

### IV.

### DISCUSSION

Consistent with recent decisions by this District and others, the Court finds that Petitioner's re-detention—without notice or a meaningful opportunity to be heard—violates procedural due process.

### A.  DUE PROCESS

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  Demore v. Kim, 538 U.S. 510, 523 (2003) (citing Reno v. Flores, 507 U.S. 292, 306 (1993)).  The Due Process Clause generally "requires some

kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990).

In several recent decisions, courts in this District have found that immigration authorities violated or likely violated due process by re-detaining noncitizens who had been released shortly after their entry to the United States without notice or an opportunity to be heard. See Cruz v. Lyons, et al., No. 5:25-cv-02879-MCS-MBK (C.D. Cal. Nov. 6, 2025) at Dkt. 12 (granting TRO ordering release of noncitizen who had been paroled into the United States and was re-arrested at appointment with United States Citizenship and Immigration Services); Yataco v. Warden, Adelanto Det. Facility, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), adopted, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE check-in). See also M.V.F. v. Santacruz, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in).

As in these cases, the Court considers Petitioner's procedural due process claim under the familiar Mathews v. Eldridge framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. Mathews, 423 U.S. at 335.

**B.   ANALYSIS**

The Court finds that having been previously released on parole, Petitioner has a protected liberty interest in remaining free from detention. See Garcia v. Noem, No. 25-CV-3759-LL-BLM, 2026 WL 194745, at *2 (S.D. Cal. Jan. 26, 2026); Hurd v. D.C., Gov't, 864 F.3d 671, 683 (D.C. Cir. 2017) ("a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated."). "Even individuals who face significant constraints on their liberty or over whose

4

liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted).  Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the ... conditions [of release].' " Garcia, 2026 WL 194745, at *2 (citing Pinchi, 792 F. Supp. 3d at 1032); Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before they can be deprived of that interest.  See Mathews v. Eldridge, 424 U.S. 319, 334–35 (1976).  To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

The Court finds that all three factors support a finding that the government's arrest of Petitioner without notification, reasoning, or an opportunity to be heard, denied Petitioner of her due process rights.  See Garcia, 2026 WL 194745, at *3. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to her humanitarian parole.  See Pinchi, 792 F. Supp. 3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." (citations omitted)); See Cruz, No. 5:25-cv-02879, Dkt. 12 at 6; Yataco, 2025 WL 4065463, at *1; C.A.R.V. v. Wofford, No. 1:25-CV-01395-JLT-SKO, 2025 WL 3059549 at * 10 (E.D. Cal. Nov. 1,

2025) (finding a petitioner had a constitutionally protected liberty interest in "approximately four years on parole"); Fernandez Lopez v. Wofford, No. 1:25-cv01226-KES-SKO, 2025 WL 2959319, at *4 (E.D. Cal. Oct. 17, 2025) (same, with respect to "nearly four years" of parole). See also Manzanarez v. Bondi, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to "over two years" on an order of release on recognizance). Freedom from imprisonment is at the "core of the liberty protected by the Due Process Clause." See Hernandez, 872 F.3d at 993 (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

With respect to the second Mathews factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive— or already has erroneously deprived—Petitioner of [her] liberty interest absent a pre-detention hearing." Cruz, No. 5:25-cv-02879, Dkt. 12 at 7. The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. Zadvydas v. Davis, 533 U.S. 678, 699 (2001). But Petitioner has not been afforded any process to determine whether her detention in fact advances either purpose.

Since the initial determination that Petitioner should be paroled because she posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. See Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). Petitioner has no criminal record, and there is no indication that she has failed to abide by the conditions of her release. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." Id. "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk ...." Id. Furthermore, Respondents have not identified any

6

evidence to suggest the purpose for which parole was authorized (i.e., release on humanitarian grounds while Petitioner's applies for asylum) has been accomplished. Based on this record, the Court concludes that there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary detention. See Garcia, 2026 WL 194745, at *3 (citing Pinchi, 792 F. Supp. 3d at 1035).

Third, the government's interest in detaining Petitioners without notice, reasoning, and a hearing is low. See Pinchi, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."); Cruz, No. 5:25-cv-02879, Dkt. 12 at 7 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez, 872 F.3d at 994. Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" Sun v. Santacruz, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (quoting Doe v. Becerra, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025). There is no indication that providing proper notice, reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government. See Garcia, 2026 WL 194745, at *3.

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in her unnecessary detention, and the Government's interest

7

in refusing to provide such process is minimal.  The Court therefore concludes that the Government's re-detention of Petitioner without adequate pre-deprivation process violated due process.  See, e.g., Sanchez, 2025 WL 2770629, at *4 (finding the petitioner's parole was revoked without notice and a hearing and without a showing of a change of circumstances, thus violating her due process rights and rendering her detention unlawful); Garcia, 2026 WL 194745, at *3 (same); Mumaev, 2026 WL 530765 (same).

### 3. Remedy

The Supreme Court has repeatedly emphasized that "[h]abeas is at its core a remedy for unlawful executive detention," and "[t]he typical remedy for such detention is, of course, release."  Munaf v. Geren, 553 U.S. 674, 693 (2008) (citing Preiser v. Rodriguez, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."))

The Ninth Circuit has similarly held that "the purpose of habeas remedies is to 'put the [petitioner] back in the position he would have been in if the [constitutional] violation never occurred.'"  Lujan v. Garcia, 734 F.3d 917, 935 (9th Cir. 2013) (quoting Nunes v. Mueller, 350 F.3d 1045, 1057 (9th Cir. 2003)); accord Chioino v. Kernan, 581 F.3d 1182, 1184 (9th Cir. 2009).  Thus, "[a]s has been found in countless similar cases in this Circuit, the appropriate remedy in such cases is to order Petitioner placed in the position he would have been absent the due process violation—that is, he should be released from custody on the conditions that were initially imposed." Iurii Mazurov v. Desert Annex Det. Facility, No. 5:26-CV-02236-BFM, 2026 WL 1365164, at *4 (C.D. Cal. May 8, 2026) (citing cases); see also Changoluiza Corrales v. D. Marin, No. EDCV 26-01716-KK-RAOX, 2026 WL 1047934, at *6 (C.D. Cal. Apr. 15, 2026) (citing Pablo Sequen v. Albarran, 806 F. Supp. 3d 1069, 1089 (N.D. Cal. 2025)); Morales v. U.S. Immigr. & Customs Enf't, No. 5:26-CV-01404-DOC-MAR, 2026 WL 1026234, at *7 (C.D. Cal. Apr. 15, 2026) ("join[ing] numerous of its sister

courts in finding that Petitioner's detention is unlawful" due to unlawful parole revocation and ordering release notwithstanding prior TRO providing a bond hearing and collecting cases); Gutierrez v. Semaia, No. 5:26-CV-01181-HDV, 2026 WL 916773, at *2 (C.D. Cal. Mar. 27, 2026); Domingo v. Kaiser, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) (similar). As one court in this District has aptly put it, "[t]he Court must heed the language in Mathews that '[a] claim to a predeprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a postdeprivation hearing.'" Villegas Molina v. Mullin, No. 2:26-CV-04091-MWC-SP, 2026 WL 1182194, at *3 (C.D. Cal. Apr. 23, 2026) (quoting Mathews, 424 U.S. at 331).

Accordingly, the Court finds that Petitioner's re-detention was unlawful, orders her forthwith release, and enjoins the Government from re-detaining Petitioner absent notice and an opportunity to be heard.

Finally, the Court notes that Petitioner also requested an award of reasonable attorney's fees and costs under the EAJA. The Court will consider an application under the EAJA that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## IV.

## ORDER

**IT IS THEREFORE ORDERED**:

(1) the Petition is **GRANTED**;

(2) Respondents are **ORDERED** to immediately release Petitioner **Andrea Michelle Pleitez Trejo (A# 249-493-122)** from custody subject only to reasonable conditions;

9

(4) Respondents are **ORDERED** to return all of Petitioner's belongings, including her identification documents, work authorization documents, and other possessions;

(5) Respondents are **ORDERED** to file a statement within one business day of Petitioner's release, attesting to Respondents' compliance with this Order;

(6) Respondents are **ORDERED** to not arrest or re-detain Petitioner under § 1225 or § 1226 without a pre-deprivation notice of at least ten (10) days before a pre-deprivation hearing, at which time the Government shall bear the burden of justifying by clear and convincing evidence that Petitioner poses a flight risk or danger to the community if not detained.

Dated:  July 1, 2026

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge

10